**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ALISON FLOWERS, PHILIP ROGERS, CAROL MARIN, ROBIN AMER, LINDSEY DORCUS, YOHANCE LACOUR, and VICTORIA NASSIF, each individually and on behalf of all others similarly situated, | ) | Case No. 1:26-cv-05491 |
| | ) | Hon. Steven C. Seeger |
| Plaintiffs, | ) | |
| v. | ) | |
| MICROSOFT CORPORATION, | ) | |
| Defendant. | ) | |

**DEFENDANT MICROSOFT CORPORATION'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

## TABLE OF CONTENTS


INTRODUCTION ........................................................................................................1

BACKGROUND ........................................................................................................3

LEGAL STANDARD..................................................................................................5

ARGUMENT..............................................................................................................5

I. PLAINTIFFS' BIPA CLAIMS FAIL BECAUSE THEY DO NOT PLAUSIBLY ALLEGE THAT MICROSOFT COLLECTED OR POSSESSED THEIR VOICEPRINTS........................................................................................................5

A. The Complaint Does Not Plausibly Allege That Microsoft Used Recordings of Plaintiffs' Voices to Train Its Models. ..........................................6

B. Even If Ingestion of Plaintiffs' Voice Recordings for Training Was Adequately Alleged, Plaintiffs Do Not Plausibly Allege That Microsoft Collected or Possessed Their "Voiceprints." ..................................................8

II. PLAINTIFFS' SECTION 15(c), 15(d), AND 15(e) CLAIMS FAIL FOR ADDITIONAL, INDEPENDENT REASONS.…………………………..........………11

A. Plaintiffs Do Not Plausibly Allege That Microsoft Sold, Leased, Traded, or Otherwise Profited From Their Biometric Data (§ 15(c)). ...............................11

B. Plaintiffs Do Not Plausibly Allege Any Disclosure or Dissemination of Their Biometric Data (§ 15(d)). .................................................................12

C. Plaintiffs Do Not Plausibly Allege Any Failure of Reasonable Care in Storing, Transmitting, or Protecting Biometric Data (§ 15(e)). ............................13

III. PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE THAT MICROSOFT'S ALLEGED CONDUCT OCCURRED "PRIMARILY AND SUBSTANTIALLY" IN ILLINOIS…14

IV. THE COURT SHOULD DISMISS PLAINTIFFS' NON-BIPA CLAIMS……………..16

A. The IRPA Claims Fail on Their Own Elements and Are Preempted by the Copyright Act..............................................................................................16

B. The ICFA Claim Is Derivative, Extraterritorial, and Insufficiently Pleaded.........18

C. The IUDTPA Claim Alleges No Actionable Conduct, No Likelihood of Confusion, and No Redressable Future Harm. ....................................................22

D. The Unjust-Enrichment Claim Stands or Falls With the Others—and Falls. .........24

CONCLUSION..........................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alam v. Miller Brewing Company*,
709 F.3d 662 (7th Cir. 2013) ....................5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................5, 7

*ATC Healthcare Services, Inc. v. RCM Technologies, Inc.*,
282 F. Supp. 3d 1043 (N.D. Ill. 2017) ....................24

*Avery v. State Farm Mutual Automobile Insurance Company*,
216 Ill. 2d 100 (2005) ....................14, 19

*Batson v. Live Nation Entertainment, Inc.*,
No. 11 C 1226, 2013 WL 992641 (N.D. Ill. Mar. 13, 2013) ....................21

*Bell Atlantic Corporation. v. Twombly*,
550 U.S. 544 (2007)....................5, 7

*Bober v. Glaxo Wellcome PLC*,
246 F.3d 934 (7th Cir. 2001) ....................22

*Brantley v. Prisma Labs, Inc.*,
No. 23 C 1566, 2024 WL 3673727 (N.D. Ill. Aug. 6, 2024)....................1, 7

*Bryant v. Compass Group USA, Inc.*,
958 F.3d 617 (7th Cir. 2020) ....................6

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
761 F.3d 732 (7th Cir. 2014) ....................19, 22

*Campana v. Nuance Communications, Inc.*,
No. 21 CV 1241, 2024 WL 2809838 (N.D. Ill. Mar. 8, 2024) ....................14, 15

*Carpenter v. McDonald's Corporation*,
580 F. Supp. 3d 512 (N.D. Ill. 2022) ....................8, 12

*Castelaz v. Estee Lauder Companies*,
No. 22 CV 5713, 2024 WL 136872 (N.D. Ill. Jan. 10, 2024)....................8

*Clark v. Microsoft Corporation*,
688 F. Supp. 3d 743 (N.D. Ill. 2023) ....................13

*In re Clearview AI, Inc. Consumer Privacy Litigation*,
585 F. Supp. 3d 1111 (N.D. Ill. 2022) ....................24

*Cleary v. Philip Morris Inc.*,
656 F.3d 511 (7th Cir. 2011) ....................25

*Cothron v. White Castle System, Inc*.,
20 F.4th 1156 (7th Cir. 2021) ....................6

*Craw v. Clorox Company*,
692 F. Supp. 3d 854 (C.D. Ill. 2023) ....................21

*D'Ambrosio v. Meta Platforms, Inc.*,
176 F.4th 928 (7th Cir. 2026) ....................16

*Dancel v. Groupon, Inc.*,
949 F.3d 999 (7th Cir. 2019) ....................16

*Deyerler v. HireVue, Inc.*,
No. 22 CV 1284, 2024 WL 774833 (N.D. Ill. Feb. 26, 2024) ....................12

*Doe v. Village of Arlington Heights*,
782 F.3d 911 (7th Cir. 2015) ....................5

*Felsenthal v. Medela*, *LLC*,
No. 24 CV 5671, 2026 WL 879337 (N.D. Ill. March 30, 2026) ....................20

*Financial Fiduciaries, LLC v. Gannett Co.*,
46 F.4th 654 (7th Cir. 2022) ....................7

*Forrest v. Universal Savings Bank, F.A.*,
507 F.3d 540 (7th Cir. 2007) ....................7, 10

*Fox v. Dakkota Integrated Systems, LLC*,
980 F.3d 1146 (7th Cir. 2020) ....................6

*G.T. v. Samsung Electronics America, Inc.*,
742 F. Supp. 3d 788 (N.D. Ill. 2024) ....................8

*Hoffower v. Seamless Contacts Inc.*,
736 F. Supp. 3d 605 (N.D. Ill. 2024) ....................16

*Huston v. Hearst Communications, LLC*,
53 F.4th 1097 (7th Cir. 2022) ....................16

*Landau v. CNA Financial Corporation*,381 Ill. App. 3d 61 (1st Dist. 2008) ....................14

*Lawrence v. Trax Records, Inc.*,
No. 22 C 5660, 2025 WL 919616 (N.D. Ill. Mar. 26, 2025) ....................23

*Lynch Ford, Inc. v. Ford Motor Company*,
957 F. Supp. 142 (N.D. Ill. 1997) ..........23

*Martell v. X Corp.*,
No. 22 C 5449, 2024 WL 3011353 (N.D. Ill. June 13, 2024) ..........8

*McGoveran v. Amazon Web Services, Inc.*,
175 F.4th 434 (3d Cir. 2026) ..........14

*McGoveran v. Amazon Web Services, Inc.*,
No. 20 CV 1399, 2023 WL 2683553 (D. Del. Mar. 29, 2023) ..........10, 15

*Namuwonge v. Kronos, Inc.*,
418 F. Supp. 3d 279 (N.D. Ill. 2019) ..........12

*Perdue v. Hy-Vee, Inc.*,
455 F. Supp. 3d 749 (C.D. Ill. 2020) ..........24

*Phillips v. DePaul University*,
2014 IL App (1st) 122817 ..........20

*Pooh-Bah Enterprises, Inc. v. County of Cook*,
232 Ill. 2d 463 (2009) ..........11

*Reid v. Unilever United States, Inc.*,
964 F. Supp. 2d 893 (N.D. Ill. 2013) ..........24

*Rivera v. Google Inc.*,
238 F. Supp. 3d 1088 (N.D. Ill. 2017) ..........9, 14

*Robinson v. Toyota Motor Credit Corporation*,
201 Ill. 2d 403 (Ill. 2002) ..........20

*Rosenbach v. Six Flags Entertainment Corporation*,
2019 IL 123186 ..........9

*Rowe v. Papa John's International, Inc.*,
No. 23 CV 2082, 2024 WL 3925411 (N.D. Ill. Aug. 23, 2024) ..........6

*Seng-Tiong Ho v. Taflove*,
648 F.3d 489 (7th Cir. 2011) ..........18

*Strautins v. Trustwave Holdings, Inc.*,
27 F. Supp. 3d 871 (N.D. Ill. 2014) ..........7

*Svoboda v. Amazon.com Inc.*,
168 F.4th 956 (7th Cir. 2026) ..........14

*Thornley v. Clearview AI, Inc.*,
984 F.3d 1241 (7th Cir. 2021) ....................6, 12

*Thrasher-Lyon v. Illinois Farmers Insurance Company*,
861 F. Supp. 2d 898 (N.D. Ill. 2012) ....................19

*Toney v. L'Oreal USA, Inc.*,
406 F.3d 905 (7th Cir. 2005) ....................18

*Tri-Plex Technical Services, Ltd. v. Jon-Don, LLC*,
2024 IL 129183 ....................19

*Vance v. Amazon.com Inc.*,
525 F. Supp. 3d 1301 (W.D. Wash. 2021) ....................9

*Vance v. Microsoft Corporation*,
No. C20-1082, 2022 WL 9983979 (W.D. Wash. Oct. 17, 2022) ....................15

*Vance v. Microsoft Corporation*,
534 F. Supp. 3d 1301 (W.D. Wash. 2021) ....................11

*Zellmer v. Meta Platforms, Inc.*,
104 F.4th 1117 (9th Cir. 2024) ....................8, 9

**Statutes**

740 ILCS 14/1 ....................14

740 ILCS 14/10 ....................2

740 ILCS 14/15(a) ....................4, 5

740 ILCS 14/15(b) ....................4, 5

740 ILCS 14/15(c) ....................4, 5, 11

740 ILCS 14/15(d) ....................4, 5, 11

740 ILCS 14/15(e) ....................4, 5, 11, 13

765 ILCS 1075/5 ....................16, 17

765 ILCS 1075/30(a) ....................16

765 ILCS 1075/30(b) ....................17, 18

765 ILCS 1075/30(d) ....................17, 18

815 ILCS 510/2(a) ....................22

**Other Authorities**

Ill. Att'y Gen. Pub. Access Op. No. 14-008, 2014 WL 4407615 (Aug. 19, 2014) .........................9

Ill. Att'y Gen. Pub. Access Op. No. 17-011, 2017 WL 10084298 (Aug. 14, 2017) .....................10

# INTRODUCTION

Plaintiffs, who allege they are variously broadcast journalists, podcasters, and audiobook narrators, assert Microsoft "took" their voices without consent, distilled each into a "voiceprint," and welded those voiceprints into the commercial voice products that now compete against them. It is a vivid story. On the face of the pleading, it is also a series of speculative guesses stacked one upon another.[1] The Court should dismiss the Complaint for at least four reasons:

First, Plaintiffs fail to plausibly allege that Microsoft collected or possessed their voiceprints, a necessary element of any BIPA claim. The Complaint begins with a broad inferential leap: Microsoft trained speech models allegedly on large volumes of publicly available audio; Plaintiffs' recordings are publicly available audio; therefore, Plaintiffs' recordings "must" have been swept in. The only factual "bridge" offered is that Plaintiffs' alleged professional work "matches the profile" of useful training audio. (Compl. ¶ 83.) Judges in this District have seen this theory before and rightly dismissed it: a plaintiff cannot state a claim under BIPA by alleging that her data was "virtually certain" to be somewhere inside a large dataset. *Brantley v. Prisma Labs, Inc.*, No. 23 C 1566, 2024 WL 3673727, at *5 (N.D. Ill. Aug. 6, 2024). From there, every contention that matters rests upon Plaintiffs' allegations, pleaded "on information and belief," that Microsoft ingested Plaintiffs' recordings and extracted Plaintiffs' voiceprints. (Compl. ¶¶ 41, 82–83; *see also, e.g., id.* ¶¶ 138, 145, 152, 159–60.) Tellingly, Plaintiffs do not allege that any

[1] Further illustrating the speculation underlying Plaintiffs' assertions that their voices were used to train Microsoft's synthetic voice models, Plaintiffs also have brought actions against eight other defendants, making similar allegations regarding the use of their voices by those entities. *See Marin v. Alphabet, Inc.*, No. 26-cv-5436 (N.D. Ill.); *Amer v. Eleven Labs Inc.*, No. 26-cv-5437 (N.D. Ill.); *Marin v. Meta Platforms, Inc.*, No. 26-cv-05438 (N.D. Ill.); *Rogers v. Nvidia Corp.*, No. 26-cv-5478 (N.D. Ill.); *Rogers v. Amazon.com, Inc.*, No. 26-cv-5497 (N.D. Ill.); *Lacour v. Apple Inc.*, No. 26-cv-5536 (N.D. Ill.); *Nassif v. Samsung Elecs. Co., Ltd.*, No. 26-cv-5567 (N.D. Ill.); and *Dorcus v. Adobe, Inc.*, No. 26-cv-5575 (N.D. Ill.). (Plaintiff Flowers is not a party in the Amazon and Apple cases.)

Microsoft voice sounds like any of them, that any Microsoft output reproduces any of their voices, or that any of their recordings appears in the one training corpus the Complaint actually identifies.

Even if Plaintiffs had plausibly alleged that Microsoft used recordings of their voices (they have not), the Complaint still would fall short of pleading the collection or possession of Plaintiffs' voiceprints. BIPA regulates biometric *identifiers*—data "used to identify an individual." 740 ILCS 14/10. A voiceprint is a measurement of a voice that identifies a specific speaker. Plaintiffs do not plead facts plausibly alleging that Microsoft creates voiceprints to train voice synthesis models. Nor do Plaintiffs allege that Microsoft's voice synthesis models can take an unknown voice and identify the speaker, or that anything in voice synthesis model parameters is capable of identifying any Plaintiff. Plaintiffs generally assert—without pleading any facts—that data from their voices has been "encoded" in Microsoft's voice model parameters, but even if that were sufficiently alleged, data that has been generalized into a synthesis engine identifies no one, and data that identifies no one is not a "voiceprint."

Second, Plaintiffs' claims under BIPA Sections 15(c), (d), and (e) also fail because Plaintiffs do not plausibly plead required elements of those claims, in addition to their failure to allege that Microsoft possessed their voiceprints.

Third, Plaintiffs' BIPA claims also fail for the independent and sufficient reason that BIPA does not apply extraterritorially, and Plaintiffs plead no conduct by Microsoft occurring "primarily and substantially" in Illinois. The only nexus to Illinois is Plaintiffs' allegations they reside in Illinois and that their recordings originally were made there; Plaintiffs notably do not plead that the extraction of alleged voiceprints occurred in Illinois but rather argue it was "directed at Illinois, regardless of the physical location of the servers." (Compl. ¶ 24.) Courts dismiss BIPA claims on

precisely this record and indeed have done so with BIPA claims against Microsoft's subsidiary Nuance Communications.

Fourth, Plaintiffs do not plausibly plead their remaining counts under the Illinois Right of Publicity Act, the Illinois Consumer Fraud Act, the Illinois Uniform Deceptive Trade Practices Act, and for unjust enrichment, which are their BIPA theory in different packaging and which fail with it. Each claim also fails on its own elements: no output identified as any Plaintiff's voice, no commercial use of any Plaintiff's identity, no deception pleaded with particularity, no likelihood of confusion, and no traceable benefit.

The Complaint should be dismissed in its entirety.

## BACKGROUND

Microsoft develops, sells, and licenses cloud, productivity, and artificial-intelligence technology. The Complaint purports to challenge a broad inventory of Microsoft voice-related offerings (Compl. ¶ 31): the standard voices in the Azure Speech Voice Gallery; high-definition voices in Azure Speech; the Limited Access Custom Neural Voice and Personal Voice features; the Voice Live API; the MAI-Voice-1 model; the Speaker Recognition API; Microsoft Teams transcription and voice attribution; a series of research models (the VALL-E, NaturalSpeech, SpeechX, LiveSpeech, ELaTE, and DeepSinger families); and speech assets acquired with Nuance Communications. (*Id.*)

Plaintiffs allege they are seven Illinois residents who work, or worked, as broadcast journalists, podcast producers, audiobook narrators, and/or voice actors. (*Id.* ¶¶ 2, 13–19.) None alleges any relationship with Microsoft respecting their voice: no Plaintiff created an account with Microsoft for voice synthesis, uploaded a recording to any Microsoft voice product, or recorded a voice-talent acknowledgment statement. (*Id.* ¶ 85.)

The Complaint alleges that modern voice synthesis trains neural networks on recorded human speech; that the network learns acoustic features—pitch, timbre, resonance, accent, cadence—and encodes those features "as mathematical representations" stored "in the parameters of the trained model"; and that the "same parameters are then used to generate new speech." (*Id.* ¶ 33.) From this, Plaintiffs allege "on information and belief" that Microsoft ingested their recordings from public platforms—YouTube, Spotify, Apple Podcasts, Audible, iHeartRadio, Amazon Music, "and similar major audio distribution platforms" (*id.* ¶¶ 83, 61)—and that "on information and belief" voiceprints "derived from those recordings are encoded in the parameters of Microsoft's commercial voice models." (*Id.* ¶ 83.) The inference allegedly rests on the VALL-E paper's statement that the model was "trained with LibriLight, a corpus consisting of 60K hours of English speech with over 7000 unique speakers" derived from LibriVox audiobook recordings; papers reporting the corpus sizes for the NaturalSpeech 2 and NaturalSpeech 3 research models; and the DeepSinger paper's description of singing-voice data "mined from the web." (*Id.* ¶¶ 37, 50.) Plaintiffs acknowledge that they do not know what Microsoft actually ingested, alleging that the relevant records are "within Microsoft's exclusive control." (*Id.* ¶ 84.)

On behalf of a putative class of all persons "whose voice recordings were produced or recorded in Illinois" and allegedly used in training (*Id.* ¶ 119), the Complaint purports to plead five BIPA counts—one for each subsection of 740 ILCS 14/15(a)–(e)—together with claims under the Illinois Right of Publicity Act ("IRPA"), the Illinois Consumer Fraud Act ("ICFA"), the Illinois Uniform Deceptive Trade Practices Act ("IUDTPA"), and for unjust enrichment. (*Id.* ¶¶ 134–207.) The relief demanded includes an injunction requiring Microsoft to "[d]estroy or retrain" its foundational voice models and the commercial products built on them. (*Id.* ¶ 12, Prayer ¶ A(6).)

## LEGAL STANDARD

A complaint must be dismissed under Rule 12(b)(6) when it fails "to state a claim to relief that is plausible on its face." *Doe v. Vill. of Arlington Heights*, 782 F.3d 911, 914 (7th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Court need not accept as true legal conclusions or "threadbare recitals" of the elements of a cause of action supported by mere conclusory statements. *Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013). Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief," and that showing must include enough facts to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 & n.3.

## ARGUMENT

### I. PLAINTIFFS' BIPA CLAIMS FAIL BECAUSE THEY DO NOT PLAUSIBLY ALLEGE THAT MICROSOFT COLLECTED OR POSSESSED THEIR VOICEPRINTS.

A threshold requirement of every BIPA count in the Complaint is collection or possession of Plaintiffs' biometric data: Plaintiffs must plead facts allowing the reasonable inference that Microsoft "collect[ed], capture[d] . . . or otherwise obtain[ed]" or "possess[ed]" their voiceprints. 740 ILCS 14/15(a), (b), (c), (d), and (e). The Complaint never gets there, for two fundamental reasons: first, Plaintiffs fail to plausibly allege that Microsoft used recordings of *their* voices to train voice synthesis models, and second, even if Plaintiffs had sufficiently alleged that Microsoft

used their voice recordings, they fail to plausibly allege that Microsoft collected or possessed *voiceprints* as a result of the model training.[2]

### A. The Complaint Does Not Plausibly Allege That Microsoft Used Recordings of Plaintiffs' Voices to Train Its Models.

The Complaint does not tie any named Plaintiff's recording to any specific dataset, ingestion event, training corpus, or model. The core allegation is pleaded on information and belief: "the voice recordings of each named Plaintiff were among the audio that Microsoft ingested." (Compl. ¶ 83.) The only theoretical factual connection Plaintiffs offer is that each Plaintiff's catalog of professional voice work "matches the profile" of training audio described as optimal in Microsoft's published research—"long-form, single-speaker, studio-quality, professionally produced," and publicly available. (*Id.* ¶ 83.) That is an inference about *categories* of audio, not an allegation that any Plaintiff's recordings were in any training set. On Plaintiffs' logic, every professional speaker in America—indeed, anyone who has ever posted clean audio to

---

[2] Microsoft is not moving to dismiss under Rule 12(b)(1). Although Plaintiffs fail to plausibly allege any claim against Microsoft for the reasons below, for purposes of Article III standing, Plaintiffs sufficiently plead harm. *See* Compl. ¶¶ 138–39 (asserting Microsoft violated § 15(b) by collecting alleged voiceprints without notice or consent); ¶¶ 152, 64 (asserting Microsoft violated § 15(c) by profiting from Plaintiffs' alleged voiceprints, causing the commercial value of Plaintiffs' voices to be diluted); ¶¶ 158–161 (asserting Microsoft violated § 15(d) by disseminating Plaintiffs' alleged voiceprints); ¶¶ 169–171, ¶¶ 172–73, and ¶¶ 42–48 (asserting Microsoft violated § 15(e) by wrongfully retaining Plaintiffs' alleged voiceprints beyond the period it retains other sensitive data and by failing to apply the same notice, consent, and retention policies as it did to other categories of sensitive data); *Bryant v. Compass Group USA, Inc.,* 958 F.3d 617, 619–20 (7th Cir. 2020), *amended on denial of reh'g and reh'g en banc*, No. 20-1443, 2020 WL 6534581 (June 30, 2020); *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1248–49 (7th Cir. 2021); *Cothron v. White Castle Sys., Inc.*, 20 F.4th 1156, 1161 (7th Cir. 2021), *certified question answered*, 2023 IL 128004; *Rowe v. Papa John's Int'l, Inc.*, No. 23 CV 2082, 2024 WL 3925411, at *4–6 (N.D. Ill. Aug. 23, 2024). Microsoft recognizes that Plaintiffs' § 15(a) claim may be a closer call but respectfully submits that the allegations of wrongful retention of alleged biometric data (*see, e.g.*, Compl. ¶¶ 154, 8, 70) are sufficient under *Fox v. Dakkota Integrated Systems, LLC*, 980 F.3d 1146 (7th Cir. 2020).

the internet—could file this same complaint against any developer of a speech model. *Twombly* and *Iqbal* require more than a plaintiff whose facts fit a demographic.

Plaintiffs try to excuse the gap by alleging that the records identifying what Microsoft ingested are "within Microsoft's exclusive control." (Compl. ¶ 84.) But alleged asymmetric access to information does not lower the pleading bar. Allegations made on information and belief must still rest on some factual foundation that lifts the claim from conceivable to plausible, *Twombly*, 550 U.S. at 555 & n.3; *Iqbal*, 556 U.S. at 678, and Plaintiffs supply none. If facts supporting the inference existed, Plaintiffs could have pleaded them—most obviously, that some Microsoft synthetic voice matches or reproduces one of their own. They plead nothing of the kind.

This District has already rejected this mode of pleading. In *Brantley v. Prisma Labs*, the plaintiffs alleged that because the defendant's AI model was trained on billions of scraped images, their faces were "virtually certain" to be among them. The court dismissed the BIPA claims, ruling that, "where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" 2024 WL 3673727, at *6 (quoting *Strautins v. Trustwave Holdings, Inc.*, 27 F. Supp. 3d 871, 881 (N.D. Ill. 2014)). Plaintiffs' theory here is the same theory, and it fails just as it did in *Brantley*.

The materials the Complaint itself incorporates make Plaintiffs' guess less plausible still. On a Rule 12(b)(6) motion, the Court may consider documents incorporated into the complaint, and where those documents contradict the allegations, the documents control. *Forrest v. Universal Sav. Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007); *Fin. Fiduciaries, LLC v. Gannett Co.*, 46 F.4th 654, 663 (7th Cir. 2022). The one training corpus the Complaint identifies by name is LibriLight—*i.e.*, "60K hours of English speech" drawn from LibriVox's free public domain audiobook recordings. (Compl. ¶ 50.) Yet neither of the two audiobook-narrator Plaintiffs (Dorcus and Nassif)

alleges that a single recording of hers appears in LibriLight, and the LibriVox corpus identifies no recording attributable to either. *See* www.librivox.org. Moreover, the Complaint's own description of these Plaintiffs' alleged catalogs—commercial titles produced for major publishers and distributed through Audible, Apple Books, and similar retail platforms (Compl. ¶¶ 2, 17, 19, 99, 105)—does not include or otherwise describe LibriVox recordings. And unlike *The New York Times Co. v. Microsoft Corp.*, one of the training-data cases the Complaint invokes (*id.* ¶ 53), where the plaintiff alleged that the accused models regurgitated its copyrighted text, Plaintiffs identify no Microsoft output that reproduces, mimics, or even resembles any of their voices. The Complaint alleges a taking without pointing to a single trace of what was supposedly taken.

### B. Even If Ingestion of Plaintiffs' Voice Recordings for Training Was Adequately Alleged, Plaintiffs Do Not Plausibly Allege That Microsoft Collected or Possessed Their "Voiceprints."

Plaintiffs fail to allege any BIPA claim because they do not plausibly allege that Microsoft collected or possessed voiceprints from recordings used to train its voice synthesis models. BIPA does not define "voiceprint," but judges in this District have. In *Carpenter v. McDonald's Corp.*, 580 F. Supp. 3d 512, 515 (N.D. Ill. 2022), the court explained that the dictionary defines the term as a "distinctive pattern of curved lines and whorls made by a machine that measures human vocal sounds for the purpose of identifying an individual speaker." *Id.* (quoting *Voiceprint*, Black's Law Dictionary (11th ed. 2019)).

Consistent with those decisions, courts hold that alleged biometric data must be *capable of identifying a person* to constitute a "biometric identifier" regulated by BIPA. *E.g.*, *Zellmer v. Meta Platforms, Inc.*, 104 F.4th 1117, 1123 (9th Cir. 2024); *G.T. v. Samsung Elecs. Am., Inc.*, 742 F. Supp. 3d 788, 800 (N.D. Ill. 2024); *Martell v. X Corp.*, No. 22 C 5449, 2024 WL 3011353, at *3 (N.D. Ill. June 13, 2024); *Castelaz v. Estee Lauder Cos.*, No. 22 CV 5713, 2024 WL 136872, at

*6–7 (N.D. Ill. Jan. 10, 2024) (the ability to ascertain identities is "the most foundational aspect of a BIPA claim.") (citation omitted). Both statutory categories—"biometric identifier" and "biometric information"—"turn on the ability to identify an individual." *Zellmer*, 104 F.4th at 1124–26 (affirming summary judgment where face signatures "cannot identify" non-users); *see Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, ¶ 34 (BIPA's protections address "identifiers that cannot be changed if compromised or misused") (citation omitted); *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1096 (N.D. Ill. 2017) ("[A] 'biometric identifier' is not the underlying medium itself, or a way of taking measurements, but instead is a set of measurements of a specified physical component . . . used to identify a person."); *Vance v. Amazon.com Inc.*, 525 F. Supp. 3d 1301, 1312 (W.D. Wash. 2021); Ill. Att'y Gen. Pub. Access Op. No. 14-008, 2014 WL 4407615, at *2 (Aug. 19, 2014).

Measured against that settled understanding, the Complaint pleads nothing. Plaintiffs do not allege that Microsoft created individualized, identifying voiceprints of them—as opposed to extracting from a mass audio the patterns in pitch, timbre, prosody, and accent that recur across speakers in order to build a generalized voice-synthesis model. The Complaint pleads no facts showing that (i) Microsoft processed any Plaintiff's voice for the purpose of identifying that Plaintiff; (ii) Microsoft's models store voice templates or other data about a Plaintiff's voice that can be used to identify her; (iii) the models' parameters, embeddings, or code can be used to identify a Plaintiff; or (iv) the models' audio outputs can be used to identify a Plaintiff.

Plaintiffs' own allegations cut the other way. They plead that whatever was extracted has been "encoded" into the parameters of generalized models—so thoroughly that "[t]he biometric data and the product are, at this point, the same thing." (Compl. ¶¶ 8, 82.) Features dissolved into a synthesis engine trained on the voices of thousands of speakers (*id.* ¶ 50) are, on the Complaint's

own account, no longer measurements of any individual—and data that cannot pick out an individual is not a voiceprint. The technical papers on which the Complaint relies (*id.* ¶¶ 33–41), properly before the Court as incorporated documents, confirm the point: they describe tokenizing, encoding, and conditioning on speech generally to produce synthetic output—not building a gallery of identifying templates. *See Forrest*, 507 F.3d at 542.

The Complaint also papers over a basic distinction between technologies. The putative class is defined around voice-*synthesis* models—systems that turn text into speech. (Compl. ¶ 119.) Speech synthesis yields audio, not identity; speech recognition yields text, not identity; translation yields language, not identity. Identification is the defining function of a *speaker-recognition* system—a different product that no Plaintiff alleges ever enrolled, verified, or processed her voice. (*See id.* ¶ 85.) Nowhere do Plaintiffs allege that any accused technology can take an unknown voice sample and say whose it is. Without that capability, there is no biometric identifier, and there is no BIPA claim.

The Illinois Attorney General confirmed long ago that a voiceprint "is not the same as a simple recording of a voice." Ill. Att'y Gen. Pub. Access Op. No. 17-011, 2017 WL 10084298, at *3 (Aug. 14, 2017); *accord McGoveran v. Amazon Web Servs., Inc.*, No. 20 CV 1399, 2023 WL 2683553, at *10 (D. Del. Mar. 29, 2023) ("[V]oice audio alone is neither a biometric identifier (a voiceprint) nor biometric information…."). What Plaintiffs actually describe—the statistical modeling of general speech patterns to synthesize new, non-attributable speech—is the antithesis of assembling a database of unique identifiers. Reading BIPA to reach it would stretch a statute concerned with identification into a general charter for regulating machine learning, sweeping in responsible AI development the General Assembly never addressed. The statutory text does not support that reach, and the Court should not adopt it.

## II. PLAINTIFFS' SECTION 15(c), 15(d), AND 15(e) CLAIMS FAIL FOR ADDITIONAL, INDEPENDENT REASONS.

Each of Counts III, IV, and V requires that Microsoft be "in possession of" Plaintiffs' biometric data. 740 ILCS 14/15(c)–(e). For the reasons discussed in Part I, Plaintiffs do not plausibly allege possession of Plaintiffs' voiceprints, and each count fails at the threshold. Each claim also fails for reasons of its own.

### A. Plaintiffs Do Not Plausibly Allege That Microsoft Sold, Leased, Traded, or Otherwise Profited From Their Biometric Data (§ 15(c)).

Plaintiffs do not allege that Microsoft exchanged their claimed biometric data for consideration. Their theory is that Microsoft "otherwise profited" by "using those voiceprints to develop, train, and commercially operate the foundational voice synthesis models that power Microsoft's commercial voice products, and by monetizing those products." (Compl. ¶¶ 151–152.) That misreads the statute.

Section 15(c)'s plain language prohibits transactions in the biometric data itself, not the sale of technology developed with data. Each enumerated verb denotes a transfer for consideration. *See Sell*, Black's Law Dictionary (10th ed. 2014), at 1567 ("To transfer (property) by sale."); *Lease*, *id.* at 1026 (to grant possession and use "in return for rent or other consideration."); *Trade*, *id.* at 1720–21 ("A transaction or swap."). Under the "cardinal rule" that a general catch-all following specific terms means "other such like," the residual phrase "or otherwise profit from" reaches only similar transfers of biometric data for value that the legislature could not "spell[] out in advance"—not every commercial activity that touches the data. *Pooh-Bah Enters., Inc. v. County of Cook*, 232 Ill. 2d 463, 492 (2009). Courts hold exactly that: Section 15(c) "regulates transactions with two components: (1) access to biometric data is shared or given to another; and (2) in return for that access, the entity receives something of value." *Vance v. Microsoft Corp.*, 534

F. Supp. 3d 1301, 1307–09 (W.D. Wash. 2021); *see Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1247 (7th Cir. 2021) (§ 15(c) is a "general rule that prohibits the operation of a market in biometric identifiers and information").

Profiting from software or services built with alleged biometric data is not "profiting from" the data. *Deyerler v. HireVue, Inc.*, No. 22 CV 1284, 2024 WL 774833, at *7 (N.D. Ill. Feb. 26, 2024) ("[T]he fact that [defendant] profited from the sale of its software does not plausibly indicate that it sold, leased, traded, or otherwise profited from the plaintiffs' biometric data itself."). Plaintiffs allege the sale of technology—subscriptions, licenses, and API access (Compl. ¶ 68(a)–(h))—not the operation of a market in anyone's voiceprint. And to the extent that Plaintiffs rely upon their conclusory allegation that their voiceprints are "encoded" in model parameters (*id.* ¶ 83), and therefore that the encoded "voiceprints" are being sold or transferred for consideration, Plaintiffs fail to plead facts plausibly supporting that allegation, as shown in Section I above. Count III should be dismissed.

**B. Plaintiffs Do Not Plausibly Allege Any Disclosure or Dissemination of Their Biometric Data (§ 15(d)).**

A § 15(d) claim requires factual allegations that the defendant disclosed, redisclosed, or disseminated the *plaintiff's* biometric data; conclusory assertions that parrot the statute do not suffice. *Carpenter*, 580 F. Supp. 3d at 519 ("[A]ll of Plaintiff's allegations regarding disclosure, redisclosure, or dissemination are conclusions that parrot BIPA's language."); *Namuwonge v. Kronos, Inc.*, 418 F. Supp. 3d 279, 285 (N.D. Ill. 2019) (court could not allow plaintiff "to proceed on such speculative allegations.").

The Complaint offers three dissemination theories, two pleaded on information and belief and the third pleaded conditionally: that Microsoft transferred voice models among its corporate affiliates; that it transmitted models across Azure cloud subprocessors, content-delivery networks,

and vendors; and that research code published on GitHub might "enable the reconstruction" of trained parameters. (Compl. ¶¶ 158–161.) None identifies what Plaintiff-specific biometric identifier was disclosed, to whom, when, or in what identifiable form. Deploying, hosting, or transferring a generalized model is not disclosing a person's voiceprint—just as shipping a product is not disclosing its ingredients' sources. Indeed, this Court has already dismissed a materially identical § 15(d) theory against Microsoft, holding that merely providing technology to customers is not disclosure or dissemination of a person's biometric data. *Clark v. Microsoft Corp.*, 688 F. Supp. 3d 743, 750 (N.D. Ill. 2023). Count IV should be dismissed.

### C. Plaintiffs Do Not Plausibly Allege Any Failure of Reasonable Care in Storing, Transmitting, or Protecting Biometric Data (§ 15(e)).

Section 15(e) is a data-security provision: it requires an entity in possession of biometric data to store, transmit, and protect that data from disclosure with reasonable care and at least as protectively as it treats other confidential and sensitive information. 740 ILCS 14/15(e). Plaintiffs' claim rests on a so-called "asymmetry" theory—that Microsoft built consent workflows, retention statements, and access controls for voice talent and enterprise customers but not for non-user training audio. (Compl. ¶¶ 167–174.)

That is not a § 15(e) claim. It is Plaintiffs' § 15(a) retention-policy claim and § 15(b) consent claim wearing a different label, and restyling those claims does not create a third. The Complaint alleges no breach, no unauthorized access, no compromise, and no misuse event involving any Plaintiff-specific biometric identifier—indeed, no facts at all about how the supposed data is stored or transmitted, much less facts plausibly showing that Microsoft's practices fall below the industry standard of care or below the care Microsoft applies to its other confidential information. A grievance about the absence of notice and consent belongs (and fails) under §§ 15(a) and 15(b). Count V should be dismissed.

### III. PLAINTIFFS FAIL TO PLAUSIBLY ALLEGE THAT MICROSOFT'S ALLEGED CONDUCT OCCURRED "PRIMARILY AND SUBSTANTIALLY" IN ILLINOIS.

BIPA does not apply extraterritorially. Under Illinois law, "a statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 184–85 (2005). BIPA contains no such provision, *see generally* 740 ILCS 14/1 *et seq.*, and the courts are unanimous that it therefore "applies only to conduct within the state." *McGoveran v. Amazon Web Servs., Inc.*, 175 F.4th 434, 441–42 (3d Cir. 2026); *see Rivera*, 238 F. Supp. 3d at 1100, 1104 (BIPA "was not intended to and does not have extraterritorial application."); *Campana v. Nuance Commc'ns, Inc.*, No. 21 CV 1241, 2024 WL 2809838, at *2 (N.D. Ill. Mar. 8, 2024); *see also Svoboda v. Amazon.com Inc.*, 168 F.4th 956, 959 (7th Cir. 2026) ("[A]ny statutory violation must occur in Illinois to warrant relief," and "Illinois Supreme Court precedent gives us no reason to question that proposition."). A plaintiff must therefore plead that the circumstances of the alleged violation occurred "primarily and substantially" in Illinois—a totality inquiry that asks whether the "majority of circumstances" relating to the violation occurred here, looking to residency, the location of the harm, where communications were sent and received, and where the defendant carried out the challenged conduct. *Landau v. CNA Fin. Corp.*, 381 Ill. App. 3d 61, 64 (1st. Dist. 2008).

*Campana* is instructive—and involved Microsoft's own subsidiary. There, Illinois plaintiffs alleged that they interacted with Nuance software from Illinois when they called Nuance's customers. The court dismissed under Rule 12(b)(6) because "the plaintiffs fail[ed] to allege *any conduct on the part of Nuance*" showing that their biometric information was 'actually collected in Illinois,' and physical presence in Illinois when interacting with a defendant's products, without more, does not plausibly plead a violation occurring primarily and substantially

in this State. 2024 WL 2809838, at *2–3. So too in *Vance v. Microsoft Corporation*, where the court entered judgment for Microsoft because the alleged conduct—downloading a dataset containing biometric data of Illinois residents—did not occur in Illinois. No. C20-1082, 2022 WL 9983979, at *6–8 (W.D. Wash. Oct. 17, 2022).

Plaintiffs' Illinois allegations reduce to three categories, none sufficient. *First*, they plead their own residency and the place their recordings were originally made. (Compl. ¶¶ 13–19, 59–60.) That is residency—the very showing courts hold insufficient. *McGoveran*, 175 F.4th at 442–43; *Campana*, 2024 WL 2809838, at *2–3. *Second*, as to the conduct that matters—the alleged ingestion of voice recordings and extraction of alleged voiceprints—the Complaint never places it in Illinois. To the contrary, Plaintiffs plead that the extraction occurred "regardless of the physical location of the servers" (Compl. ¶¶ 24, 60), an admission that the biometric-creating conduct they challenge did not occur here; that Microsoft's training occurred on Microsoft-operated infrastructure at unspecified locations in the United States (*id.* ¶ 32); and that class members "never interacted with Microsoft in connection with the collection of their biometric data" (*id.* ¶ 144). Where the challenged conduct is online, the controlling locations are where the data was received, stored, and accessed, and the place of the alleged extraction, not the place where a recording was originally made, is what counts. *Third*, Plaintiffs fall back on downstream commerce: that Microsoft "sells, delivers, and disseminates"—i.e., transmits—models and voice outputs to Illinois customers. (Compl. ¶¶ 23–24; *see also id.* ¶ 63.) That allegation is conclusory and doubly deficient: it identifies no transmission of any Plaintiff's biometric identifier to or from anyone, and it depends on the premise—refuted in Part I.B—that generalized model parameters are "voiceprints" at all. Selling products into Illinois is something every national company does. It does not relocate a training pipeline to this State.

## IV. THE COURT SHOULD DISMISS PLAINTIFFS' NON-BIPA CLAIMS.

### A. The IRPA Claims Fail on Their Own Elements and Are Preempted by the Copyright Act.

#### *1. The IRPA claims fail under Rule 12(b)(6).*

IRPA protects an individual's identity, not generic vocal similarity. Liability under § 30(a) requires the use of an individual's "identity"—an attribute that identifies that person, to a reasonable audience, as *that individual*, *Dancel v. Groupon, Inc.*, 949 F.3d 999, 1006, 1008–09 (7th Cir. 2019)—for a "commercial purpose," meaning the public holding out of the person's identity to sell or advertise a product. 765 ILCS 1075/5, 1075/30(a); *Huston v. Hearst Commc'ns, LLC*, 53 F.4th 1097, 1100–02 (7th Cir. 2022) (affirming dismissal of IRPA claim where the plaintiff did not allege her identity was held out "to aid, effectuate, or propose a commercial transaction."); *D'Ambrosio v. Meta Platforms, Inc.*, 176 F.4th 928, 935 (7th Cir. 2026) (affirming dismissal IRPA claim where plaintiff failed to sufficiently allege any defendant used his likeness for a commercial purpose).

The Complaint alleges that Microsoft's technologies can generate "realistic," "human-sounding" voices and, in the Custom Neural Voice configuration, speech "nearly identical to" *a* source human voice. (Compl. ¶ 181.) What it does not allege is any use of any Plaintiff's identity. Plaintiffs point to no advertisement, product page, voice-catalog entry, Copilot output, Azure voice, or Dynamics voice as any Plaintiff's voice; no listener who recognized any output as a Plaintiff; and no instance in which Microsoft held out a synthetic voice as a Plaintiff's. (*Id.* ¶¶ 177–185, 197–200.) Thus, Plaintiffs fail to plead that Microsoft markets and sells any product on the basis of any Plaintiff's identity. *See Huston*, 53 F.4th at 1099–1104; *D'Ambrosio*, 176 F.4th at 934–37; *see also Hoffower v. Seamless Contacts Inc.*, 736 F. Supp. 3d 605, 613–16 (N.D. Ill. 2024) ("[A]llowing a plaintiff to bring an IRPA claim without the defendant having actually shown or

displayed the plaintiff's identifying information would negate the statute's requirement that a violation consists of the defendant's *handling* of that information, specifically the 'use' or 'holding out' of it.").

The IRPA's amended "digital replica" provisions, 765 ILCS 1075/30(b) and 765 ILCS 1075/30(d), do not save Plaintiffs' claim. Liability under Section 30(b) requires "knowingly distribut[ing], transmit[ting], or mak[ing] available to the general public a sound recording or audiovisual work with actual knowledge that the work contains an unauthorized digital replica." 765 ILCS 1075/30(b). To qualify as a "digital replica," under the IRPA, a newly created electronic representation of an individual's voice must reflect what "a reasonable person would believe" is the voice of the particular individual being imitated. 765 ILCS 1075/5. Section 30(d), meanwhile, imposes liability on those who "materially contribute[] to, induce[], or otherwise facilitate[]" another person's violation of Section 30(b) "after having obtained actual knowledge that the other person is infringing upon an individual's rights." 765 ILCS 1075/30(d).

Plaintiffs have not sufficiently pleaded either a "digital replica" or "actual knowledge." Plaintiffs allege—again on information and belief—that Microsoft's technologies "generate, distribute, and make available to the public voice outputs that constitute unauthorized digital replicas" of them (Compl. ¶ 182), but Plaintiffs do not identify any such output. An allegation that a product could *in theory* replicate a voice is not an allegation that it has created a replica of any Plaintiff's voice that a reasonable listener would take for the genuine article. And even if Plaintiffs had pleaded the existence of digital replicas (they have not), they have failed to allege Microsoft had "actual knowledge." 765 ILCS 1075/30(b), (d). Plaintiffs have not pleaded any facts indicating that Microsoft was aware that any particular output contained an unauthorized "digital replica" of a named Plaintiff's voice and then "distribute[d], transmit[ted], or ma[de] available to the general

public" that work, or "materially contribut[ed] to, induc[ed], or otherwise facilitat[ed]" someone else to do the same. 765 ILCS 1075/30(b), (d). Plaintiffs' failure to plead facts supporting the existence of a "digital replica" or Microsoft's "actual knowledge" are each independently fatal to their "digital replica" theory of IRPA liability.

***2. The IRPA claims are preempted in any event.***

Section 301(a) of the Copyright Act preempts state-law claims that assert rights equivalent to copyright in works of authorship. "To avoid preemption, a state law must regulate conduct that is qualitatively distinguishable from that governed by federal copyright law—*i.e.*, conduct other than reproduction, adaptation, publication, performance, and display." *Seng-Tiong Ho v. Taflove*, 648 F.3d 489, 501 (7th Cir. 2011) (quoting *Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 910 (7th Cir. 2005)). Plaintiffs' § 30(a) claim is preempted under that standard: as pleaded, it is grounded in the allegation that Microsoft reproduced Plaintiffs' voice *recordings* and derived value from them—that is, the use of works, not the use of identity. The § 30(b) "digital replica" claim is preempted for the same reason: because Plaintiffs fail to plausibly allege that Microsoft disseminates any digital replica of their voices—the element that would make the claim about identity rather than works, *see infra*—what remains is a complaint about the copying of their recordings. That is a copyright theory by another name, and Illinois law cannot supply it. Count VI should be dismissed.

**B. The ICFA Claim Is Derivative, Extraterritorial, and Insufficiently Pleaded.**

The ICFA count is derivative of the BIPA and IRPA counts and fails with them. The "unfair" practice alleged is "Microsoft's collection and commercial exploitation of the biometric identifiers of Illinois persons without their knowledge or consent," which is said to "offend[] Illinois public policy" as expressed in BIPA and IRPA. (Compl. ¶ 190.) Because Plaintiffs fail to

state a claim under either statute, the ICFA claim fails with them. It also fails for the same territorial reason: like BIPA, ICFA does not reach conduct occurring outside Illinois, *Avery*, 216 Ill. 2d at 184–85, and Plaintiffs have pleaded no conduct occurring primarily and substantially within the state. *See supra* Part II.

The claim also independently fails on its elements. To state an ICFA claim, a private consumer plaintiff must plausibly allege (1) "a deceptive or unfair act"; (2) "the defendant's intent that the plaintiff rely on the deceptive or unfair practice"; (3) "that the unfair or deceptive practice occurred during a course of conduct involving trade or commerce"; and (4) that the plaintiff "suffered 'actual damage'"—meaning "actual pecuniary loss"—"as a result of the defendant's violation." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014) (citations omitted). The statute also "'imposes a proximate causation requirement' for private causes of action." *Tri-Plex Tech. Servs., Ltd. v. Jon-Don, LLC*, 2024 IL 129183, ¶ 26. Plaintiffs' allegations fall short of these requirements in multiple respects.

*First*, Plaintiffs are not consumers—they purchased nothing from Microsoft (*see* Compl. ¶ 85)—and are not otherwise eligible for protection under ICFA. Plaintiffs plead no facts satisfying the consumer-nexus test, which requires that the plaintiff be the intended target of the challenged deception or that the conduct otherwise implicate consumer-protection concerns. *See Thrasher-Lyon v. Ill. Farmers Ins. Co.*, 861 F. Supp. 2d 898, 911–12 (N.D. Ill. 2012) (finding plaintiff lacked standing to bring ICFA claim where she failed to allege how the defendants' actions or representations concerned other consumers or involved consumer protection concerns); *Tri-Plex, LLC*, 2024 IL 129183, ¶ 37 (explaining that the ICFA "expressly requires a plaintiff to plead and prove that the deceptive act or practice proximately caused the plaintiff's injury, which means that *the plaintiff* must be the intended target of the alleged deception.").

*Second*, Plaintiffs have not plausibly alleged either a deceptive or unfair act. A statement or act is deceptive under ICFA if it would be "likely to deceive reasonable consumers," meaning there is "a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Felsenthal v. Medela*, *LLC*, No. 24 CV 5671, 2026 WL 879337, at *3 (N.D. Ill. March 30, 2026) (quotations omitted). Any such statement or act "must be viewed in light of all the information available to plaintiffs." *Phillips v. DePaul Univ.*, 2014 IL App (1st) 122817, ¶ 44. Meanwhile, a practice may qualify as "unfair" under the ICFA if it offends public policy, is immoral, unethical, oppressive, or unscrupulous, or causes substantial injury to consumers. *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417–18 (Ill. 2002).

Plaintiffs' deception theory rests on three purported issues, none of which identifies a statement "likely to deceive reasonable consumers" given "all the information available to [P]laintiffs." *Medela*, 2026 WL 879337, at *3. First, Plaintiffs fault Microsoft's Azure AI Speech documentation for stating that Microsoft "may process biometric voice signatures." (Compl. ¶¶ 34, 191.) But Plaintiffs never allege that statement is false—only that they would have preferred more detail. The ICFA does not make a truthful disclosure actionable because a plaintiff wishes it said more. *See Phillips*, 2014 IL App (1st) 122817, ¶ 40 (dismissing deception ICFA claim where, "while the information published by [defendant] could certainly have been more specific … plaintiffs have identified no affirmative misrepresentation."); *see also Medela*, 2026 WL 879337, at *3–4. Second, Plaintiffs point to Microsoft's voice-and-avatar-talent documentation, which describes and allocates notice, consent, and deletion obligations to customers processing biometric data. (Compl. ¶¶ 47, 191.) But an allocation of compliance responsibility in a commercial use agreement is not a representation to the consuming public about a technology's attributes. Third,

Plaintiffs allege "total opacity" about the sources of Microsoft's alleged training data. (*Id.* ¶ 191.) But Plaintiffs plead no facts suggesting that a reasonable consumer would fairly infer, from the absence of any contrary disclosure, that publicly posted content could not have been used in training Microsoft's voice technology. Plaintiffs have, at most, pleaded that they might have been misled "by [their] own assumptions," not by any of Microsoft's actual representations. *Craw v. Clorox Co.*, 692 F. Supp. 3d 854, 860–62 (C.D. Ill. 2023) (dismissing ICFA claim). They have not plausibly alleged a deceptive statement or act by Microsoft.

Plaintiffs' unfairness theory fails for similar reasons. Plaintiffs' allegations do not establish that Microsoft's actions offended public policy, were immoral, unethical, oppressive, or unscrupulous, or caused substantial injury to consumers. *See Toyota Motor Credit Corp.*, 201 Ill. 2d at 417–18. Plaintiffs' public-policy theory rests entirely on the policies "expressed in BIPA" and "in IRPA," (Compl. ¶ 190,) and thereby collapses with the statutory claims themselves. Conduct that does not violate those statutes does not offend the policies they embody. *See Batson v. Live Nation Ent., Inc.*, No. 11 C 1226, 2013 WL 992641, at *4 (N.D. Ill. Mar. 13, 2013), *aff'd*, 746 F.3d 827 (7th Cir. 2014); *supra* at Sections I–III & IV(A). Plaintiffs make no allegations that Microsoft's conduct was immoral, unethical, oppressive, or unscrupulous. (*See* Compl. ¶¶ 186–194.) Nor do Plaintiffs allege substantial injury to *consumers* of Microsoft's technologies. Rather, the injuries they plead—"the diversion of licensing income," "the displacement of their professional voice work," "suppressed voiceover and narration rates," "diverted opportunities," and a "loss of control over their biometric data and professional identities" (Compl. ¶¶ 190, 192)—

are, at most, injuries to purported *competitors* to the challenged technologies, not *consumers* of those technologies.[3]

*Third*, Plaintiffs plead no actual damages proximately traceable to any alleged deception of them or unfair practice. The asserted injuries—"lost and diminished licensing income, suppressed voiceover and narration rates, diverted opportunities and [Plaintiffs'] loss of control over their biometric data and professional identities" (Compl. ¶ 192)—are alleged effects of Microsoft's technologies in the marketplace, not losses caused by anyone's reliance on a Microsoft misstatement or practice. *Camasta*, 761 F.3d at 739–40.

Count VII should be dismissed.

**C. The IUDTPA Claim Alleges No Actionable Conduct, No Likelihood of Confusion, and No Redressable Future Harm.**

Sections 2(a)(2) and 2(a)(3) of the IUDTPA prohibit conduct that "causes likelihood of confusion or of misunderstanding" as to the "source, sponsorship, approval, or certification of goods or services," or as to "affiliation, connection, or association with or certification by another." 815 ILCS 510/2(a)(2)–(3). The paradigm claim is passing off: a defendant that affirmatively holds out its goods as someone else's, or someone else's endorsement as its own. Courts in this District apply Rule 9(b)'s particularity requirement to IUDTPA claims sounding in deception. *E.g.*, *Lawrence v. Trax Recs., Inc.*, No. 22 C 5660, 2025 WL 919616, at *2 (N.D. Ill. Mar. 26, 2025). Plaintiffs' claim fails under any pleading standard, for three reasons.

[3] To the extent that Plaintiffs' unfair practices theory sounds in fraud or concealment, it fails to satisfy Rule 9(b)'s particularity requirement as well. *See Camasta*, 761 F.3d at 736–39 (7th Cir. 2014). The Complaint merely offers generalities: that public documentation used "hedging language" and that Microsoft maintained "opacity" about training data (Compl. ¶ 191). Moreover, the documents Plaintiffs characterize as obscuring the truth are Microsoft's own public research papers and product documentation—the very sources from which Plaintiffs built their Complaint. A defendant does not "conceal" what the plaintiff learned from the defendant's public statements. *See Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938–39 (7th Cir. 2001).

*First*, IUDTPA addresses representations, but Plaintiffs' claim rests on supposed inaction. Plaintiffs' theory is that Microsoft's voice outputs circulate "without consumer-facing disclosure that the voice was AI-generated." (Compl. ¶ 198.) But "[i]mplicit (if not explicit)" in §§ 2(a)(2) and (3) is the requirement that "the defendant must make some form of a representation (or do something) to the public . . . regarding a good or service." *Lynch Ford, Inc. v. Ford Motor Co.*, 957 F. Supp. 142, 147 (N.D. Ill. 1997) (dismissing § 2(a) claim premised on nondisclosure). Plaintiffs point to no statement, label, listing, or output in which Microsoft represented—expressly or by implication—that a real person created, performed, endorsed, or authorized any synthetic voice. (Compl. ¶¶ 197–200.) What they demand instead is an affirmative labeling regime of their own design: disclosures, at the point of generation, that outputs are AI-generated and unauthorized by the persons they supposedly resemble. (*Id.* ¶¶ 198, 200.) The IUDTPA imposes no such duty. A statute that prohibits causing confusion does not obligate a seller to anticipate and dispel every mistaken assumption a listener might bring to a product.

*Second*, Plaintiffs plead no mechanism of confusion. No Microsoft output is alleged to sound like any Plaintiff. No listener is alleged to have mistaken a synthetic voice for a Plaintiff's, or to have believed that any Plaintiff created, sponsored, or approved one. (Compl. ¶¶ 197–200.) And the accused offerings foreclose the inference: they are enterprise products sold to sophisticated purchasers under negotiated agreements. A product that announces itself as AI does not pass itself off as a person.

*Third*, Plaintiffs plead no redressable likelihood of future harm. The IUDTPA affords only injunctive relief, and "[t]he likelihood of future harm occurring absent an injunction is an element of liability on [an IUDTPA] claim, not merely a separate element of damages." *ATC Healthcare Servs., Inc. v. RCM Techs., Inc.*, 282 F. Supp. 3d 1043, 1050 (N.D. Ill. 2017); *see Reid v. Unilever*

*U.S., Inc.*, 964 F. Supp. 2d 893, 918 (N.D. Ill. 2013). The future harm Plaintiffs plead is not confusion about them; it is diverted demand—the fear that AI-generated voices will continue to displace "licensed human voice performances" in the markets where Plaintiffs earn their livings. (Compl. ¶ 199.) That harm turns on the purchasing choices of third parties Microsoft does not control, and Plaintiffs plead no facts suggesting that the disclosures they seek would steer those choices back to human performers—much less to these seven Plaintiffs. A buyer who selects a synthetic voice for reasons of cost or speed does not become a customer of Plaintiffs because the audio file carries a label.

The requested injunction would not even reach the conduct Plaintiffs fear. On the Complaint's own account, voice outputs, once generated, can be downloaded, shared, and commercially exploited downstream without any disclosure at all. (Compl. ¶ 198.) A label affixed at the point of generation travels only as far as the next user chooses to carry it; third parties remain free to strip it away. Harm that depends on the independent conduct of persons beyond the defendant's control is "not the type of harm that the Court is able to issue an injunction against." *Perdue v. Hy-Vee, Inc.*, 455 F. Supp. 3d 749, 773 (C.D. Ill. 2020) (dismissing IUDTPA claim). Count VIII should be dismissed.

**D. The Unjust-Enrichment Claim Stands or Falls With the Others—and Falls.**

Unjust enrichment is not a freestanding theory; it "will stand or fall with the related claim." *In re Clearview AI, Inc. Consumer Privacy Litig.*, 585 F. Supp. 3d 1111, 1130 (N.D. Ill. 2022) (quoting *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011)). Plaintiffs say as much themselves: Microsoft's retention of benefits is "unjust," they allege, because its conduct "violated the Illinois statutory protections for biometric data (BIPA) and for personal identity (IRPA)." (Compl. ¶ 206.) Those claims fail, and this one fails with them.

The claim also fails independently. Plaintiffs plead no measurable benefit that *their* voices—as distinct from the "hundreds of thousands of hours" of other audio on which the models allegedly trained (Compl. ¶¶ 1, 50)—conferred on Microsoft, and no traceable corresponding detriment to themselves, as the doctrine requires. *Cleary*, 656 F.3d at 518–19. Count IX should be dismissed.

## CONCLUSION

Each of the grounds above is independently dispositive. Plaintiffs plead a speculative theory of ingestion, a category of data BIPA does not regulate, conduct Illinois law does not reach, and tag-along claims that fail on their own elements. Microsoft respectfully requests that the Court dismiss the Complaint in its entirety and grant such further relief as the Court deems just.

Dated: August 10, 2026

Respectfully submitted,

MICROSOFT CORPORATION

By: */s/ David C. Layden*
One of its attorneys

David C. Layden
Savannah E.B. McNeily
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, Illinois 60654-3456
Telephone: (312) 222-9350
DLayden@jenner.com
SMcNeily@jenner.com